# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RICHARD A. MAYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01755 |
| ) | Judge Nixon / Knowles |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, et al, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 106. In support of their Motion, Defendants have contemporaneously filed a Memorandum of Law (Docket No. 107); a Statement of Undisputed Material Facts (Docket No. 115); the Declaration of Allen Lott with Exhibits (Docket Nos. 111 - 111-4); and the Affidavits of James Bridges, M.D. (Docket No. 108), Irena Fitzgerald (Docket No. 109), Eddra Hawkins (Docket No. 110), Audrey Rimmer (Docket Nos. 112 - 112-5), Staci Turner, N.P. (Docket Nos. 113 - 113-9), and Latasha Williams-Golden (Docket No. 114).

Plaintiff has filed a "Motion to Deny Summary Judgment," which the undersigned will construe as a Response to the instant Motion, along with two supporting "Briefs." Docket Nos. 118, 119, 124. Plaintiff has not, however, responded to Defendants' Statement of Undisputed Material Facts, nor has Plaintiff filed his own Statement of Undisputed Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, alleging that Defendants' violated his First and Eighth Amendment rights. Docket No. 1. Specifically,

Plaintiff sues Defendants for: "(1) conspiracy to violate civil rights"; (2) "deliberate indifference"; (3) denying "access to programs by a handycaped [*sic*] inmate"; (4) "being systematically denied access to lawyers and due process"; and (5) "withholding vital medical care - to wit - physical therapy. Perscribed [*sic*] medication (because of cost)." *Id.*

Plaintiff indicates that he sues Defendant "CCA Metro Davidson Co." in its individual and official capacity,[1] but does not indicate the capacity in which he sues all other Defendants. *Id.* Plaintiff's failure to indicate the capacity in which he sues the other Defendants means that they are deemed to be sued in their official capacities only. *Wells v. Brown*, 891 F.2d 591, 593-94 (6th Cir. 1989). Plaintiff seeks the following relief: (1) $1,000,000 from CCA for "pain and suffering"; (2) "Unit Manager Fitzgerald be relieved of duty"; (3) "Unit Manager Hayes forced to take early retirement"; (4) "C/O Lott relieved of duty"; (5) "Capt Hawkins relieved of duty"; (6) "All guilty partys [*sic*] be indicted on federal civil rights violations"; and (7) "to be moved to DeBerry Special Needs Facility." *Id.*

Defendants filed the instant Motion and supporting materials arguing that they are entitled to Summary Judgment because: (1) Plaintiff has not exhausted his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e; (2) Plaintiff has neither alleged nor established that the alleged constitutional deprivations occurred pursuant to an official CCA policy, practice, or custom; (3) Defendants did not discriminate against Plaintiff; rather, he was placed in segregation for violating prison rules; (4) Plaintiff cannot establish that Defendants were deliberately indifferent to his serious needs; and (5) respondeat superior is not a

---

[1] Although Plaintiff checks the boxes indicating that he sues "CCA Metro Davidson Co." in both its individual and official capacities, "CCA Metro Davidson Co." is not an individual capable of being sued in an individual capacity; it is an official entity.

basis for the imposition of liability under § 1983. Docket Nos. 106, 107.

Plaintiff's Response and "supporting" Briefs are comprised of his thoughts, opinions, conclusory statements, and allegations that are nonresponsive to the grounds proffered by Defendants in their Motion for Summary Judgment. Docket Nos. 118, 119, 124. For example, Plaintiff states:

> The plaintiff is quite sure that the court is aware of the defendants long history of civil rights abuse / abuse of power and authority givin them by the good citizens of davidson county nashville tn.
>
> Moreover these are only the cases that have actually made there way to the court system and been settled "see attached"
>
> Not to mention the countless thousands of times that CCA has gotten away with this kind of barbaric activity.
>
> Most of these inmates are not literate enough to bring a civil case to full blosom. "Fortunately" the general public is starting to become aware of the multi billion dollar company that boast (for profit.) It has been said to me personally "the plaintiff" by any number of CCA administration staff. That CCA does not concern thereself with lawsuites thay only settle and move on. This is not the outcome that this plaintiff is seeking this plaintiff seeks genuine transparancy and justice through a jury.

Docket No. 119, p. 2.

As has been noted, Plaintiff has not responded to Defendant's Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Facts.

For the reasons discussed below, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, no genuine dispute as to any material fact exists and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 106) be GRANTED.

3

## II.  Undisputed Facts[2]

### A.  Allegations of Plaintiff's Verified Complaint

The allegations of Plaintiff's Verified Complaint, in their entirety, are as follows:

> On May 31st myself Richard A. Mayers was denied access to bathroom facilitys.  Being 52 years old and after sleeping 3 hours it was held as long as possible, and so was forced to urinate in a bowl.  At this time, I was threatned by another inmate, and argument insued.  At wich time one C/O Lott Jr. apprehinded Mr. Mayers and not the other inmate, the whole time myself telling C/O Lott that he must be being somehow racist because of his refusel to listen to my side, and review pelco camaras.  He at this time called Unit Manager Fitzgerald.  She also refused to listen, and ask that I walk with her (on my walker) to the Lts desk.  I did as asked.  There one Capt. Hawkins was notified and he made the decision to put a cripled inmate in seg. and not the other inmate that was completely healthy.  I was written up and charged with assault - failure to follow - I was ultimately found not guilty after Investigator Davis reviewed pelco.  Upon being locked up my personal property was stolen - my legal work was read by staff and inmates alike. This also available on pelco.  Unit Manager Hayes was ultimately responsible for this violation.  I was placed in a cell in seg a not hadicap cell.  And was denied toilet paper.  Ultimately water got on the floor and I fell and re Injured my all ready seriously damaged hip and arm.  I was at this time placed in medical observation after wich an investigation was conducted and I was found not guilty and released back into population now in a wheel chair.
>
> Once again on June 18th at 16:00 hours I was threatened that if I did not stand up out of my wheel chair that I would be going to the hold.  I informed C/O Lott that I was even now worse crippled than before.  He then asked Sgt Williams to assist.  She instructed me to stand, I then told her that I could not stand at that instant doe to the position of the bullet and shrapnel in my hip.  She told me to come on to seg. I said no problem but I will secure my legal work first.  I was taken to seg without securing my legal work.  At which time the C/Os and any number of inmates were again allowed to pilfer

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

> in personal property. Only one hour previous my visit (did not show) Fiancé) due to no transportation and was promised one phone call in seg but of course did not receive it. Medication was also being with-held and I am/was in a tremendous amount of pain. I suspect I had it black out and attempted to bash my brains on the wall. Some time later I came around and asked to be placed in 4 point restraints or in a restraint chair. I was then told that thay did not do that here. I explained that I have in the past done damage to myself when in that state of mind. Thay still said it didn't matter. At wich point I was ingaged in argument, became inraged again blacked out and did serious damage to my head. A 20 year military veteran as well as many years employed by CCA one C/O Dotson observed and witnessed my insane self destructive behavior as well as asking to be restrained. I was left laying on the floor overnight and and [intelligible] / available records will show that the next morning I was rushed to Meharry General Hospital. A brain scan was done and supposedly no injurys accured, but photos and now serious problems with memory and personality prove different. I was returned to the institution, place in seg and once again found now guilty of refusing to stand up. But was kept in seg for 15 days for having an aspirin) (really to let the damage heal).
>
> I was at this point released to population, placed in a handicap cell but in a unit without a functioning handipcap shower with Unit Manager Fitzgerald.

Docket No. 1.

**B. Affidavit of James Bridges, M.D.**

Defendant Bridges is a physician licensed to practice medicine in the State of Tennessee. Docket No. 108, Affidavit of James Bridges, M.D. ("Bridges Aff."), ¶1. Dr. Bridges provides medical treatment at the Metro-Davidson County Detention Facility ("Detention Facility"). *Id.*

On May 31, 2014, Plaintiff was transferred to administrative segregation, he claimed that he slipped on water in his segregation cell. *Id.*, ¶ 3. After reporting this alleged injury, Plaintiff was moved to medical observation. *Id.*

On June 2, 2014, Plaintiff was observed acting in a destructive and careless manner by

5

throwing his walker across his cell in medical observation and then attempting to walk without it. *Id.*, ¶ 4.

After allegedly injuring himself, Plaintiff was examined, x-rayed, and treated appropriately. *Id.*, ¶ 5.

**B.  Affidavit of Irena Fitzgerald**

Irena Fitzgerald is employed by Corrections Corporation of America ("CCA"), as a Case Manager at the Detention Facility. Docket No. 109, Affidavit of Irena Fitzgerald ("Fitzgerald Aff."), ¶ 1.

On May 31, 2013, Case Manager Fitzgerald observed Plaintiff threaten to throw his urine on several African American inmates. *Id.*, ¶ 3. Based on these threats, she decided to place Plaintiff in administrative segregation. *Id.,* ¶ 4.

**C.  Affidavit of Eddra Hawkins**

Eddra Hawkins is employed by CCA as a Captain at the Detention Facility. Docket No. 110, Affidavit of Eddra Hawkins ("Hawkins Aff."), ¶ 1.

On May 31, 2014, Captain Hawkins learned that Plaintiff had threatened to throw his urine on several African American inmates. *Id.*, ¶ 3. Captain Hawkins agreed with Case Manager Fitzgerald's decision to place Plaintiff in administrative segregation because threatening to throw urine on other inmates is a violation of CCA rules. *Id.*, ¶ 4. The appropriate punishment for such threats is placement into administrative segregation. *Id.*, ¶ 5.

Captain Hawkins did not retaliate against Plaintiff because CCA's daily standing ID counts were in place long before Plaintiff filed this lawsuit. *Id.*, ¶ 6.

**D. Declaration of Allen Lott**

Allen Lott is employed by CCA as Corrections Officer at the Detention Facility. Docket No. 111, Declaration of Allen Lott ("Lott Dec."), ¶ 1. Plaintiff began his incarceration at the Detention Facility on February 10, 2014. *Id.*, ¶ 3.

Prior to his incarceration, Plaintiff was shot in the hip and had surgery to repair the damage. *Id.*, ¶¶ 4, 5. During his incarceration, Plaintiff alternated between using a walker and a wheelchair as necessary. *Id.*, ¶ 6.

Throughout his incarceration, Plaintiff had various issues with African American inmates. *Id.*, ¶ 18.

Plaintiff was, and continues to be, recognized as a problem inmate. *Id.*, ¶ 7. Plaintiff repeatedly was observed stockpiling feces in his cell and then spreading them over his cell. *Id.*, ¶ 8. He was also observed urinating in various containers and threatening to throw that urine on other inmates. *Id.*, ¶ 9.

On May 31, 2014, Plaintiff, a Caucasian inmate, urinated in a bowl, claiming that he did that because he was denied access to the bathroom for three hours. *Id.*, ¶ 10. This is not true; Plaintiff was not denied access to a bathroom for an inappropriate amount of time and specifically had access to a handicapped bathroom, as all housing units are equipped with such bathrooms and toilet paper. *Id.*, ¶¶ 10, 11.

On that same day, several African-American inmates reported to Corrections Officer Lott that Plaintiff had threatened to pour his urine on another African American inmate. *Id.*, ¶ 12. After Officer Lott heard that report, he observed Plaintiff threaten to throw his urine on multiple African American inmates. *Id.*, ¶ 13. After he observed Plaintiff make these threats to other

inmates, Officer Lott placed Plaintiff in the sallyport, which is a small area that separates the housing unit from the hallway. *Id.*, ¶ 14. After he placed Plaintiff in the sallyport, Officer Lott called the Emergency Response Team ("ERT") and requested that they respond. *Id.*, ¶ 15. Officer Lott made this request based on reports from several inmates that Plaintiff was in possession of razor blades in his cell. *Id.,* ¶ 16. Officer Lott subsequently conducted a search of Plaintiff's cell and found razor blades, which he then confiscated as contraband. *Id.*, ¶ 17.

Officer Lott, along with Case Manager Pam Hayes, packed all of Plaintiff's belongings and took them to the area behind the officer's panel. *Id.*, ¶ 19. Officer Lott inventoried all of Plaintiff's items, placed them in a bag, and sent them to the segregation unit along with Plaintiff. *Id.*, ¶ 20. Included in Plaintiff's belongings were several documents. *Id.*, ¶ 21. Officer Lott personally ensured that all of Plaintiff's belongings were collected, inventoried, and sent with him to the segregation unit. *Id.*, ¶ 23.

No inmate had access to any of Plaintiff's property, and no CCA employee read any of Plaintiff's legal paperwork. *Id.*., ¶ 22.

Every day at 3:45p.m., inmates are required to participate in a standing ID count. *Id.*, ¶ 24. During these counts, inmates, if able, are required to stand, briefly, by their bunks while corrections officers circulate throughout the facility to ensure that all inmates are present and doing well. *Id.*, ¶ 25. If inmates have an order from the medical department, they are not required to stand for these standing ID counts. *Id.*, ¶ 26. Inmates in wheelchairs, if they do not have an order from the medical department, however, are required to stand briefly during the standing ID count. *Id.*, ¶ 27. The purpose of standing during these counts is to ensure that inmates are doing well. *Id.*, ¶ 28.

8

Prior to the standing ID count on June 18, 2014, Officer Lott personally observed Plaintiff stand-up repeatedly from his wheelchair that same day. *Id.*, ¶ 29. After Plaintiff refused to stand during the standing ID count, he became hostile and violently pushed his wheelchair toward Sergeant Latasha Williams-Golden. *Id.*, ¶ 30. Officer Lott then called the ERT to respond to Plaintiff's hostile behavior. *Id.*, ¶ 31. The ERT arrived and transported Plaintiff to the segregation unit. *Id.,* ¶ 32.

Customs relevant to Plaintiff's claims in this litigation mandate that inmates receive access to the bathroom and toilet paper, that inmates are not discriminated against based upon their handicapped status or race, that CCA employees and inmates do not take the personal property of other inmates, that CCA employees do not force inmates to stand when they physically are unable to do so, and that inmates receive necessary medical treatment and medication. *Id.*, ¶ 37.

**E. Affidavit of Audrey Rimmer**

Audrey Rimmer is employed by CCA as CCA's Quality Assurance Administrative Assistant and Informal Resolution Coordinator. Docket No. 112, Affidavit of Audrey Rimmer ("Rimmer Aff."), ¶ 1. CCA implemented an administrative grievance system that inmates at the Detention Facility may use to seek redress of issues relating to the conditions of their confinement. *Id.*, ¶ 3. The substantive and procedural aspects of CCA's administrative grievance system are delineated in CCA Policy 14-5, Inmate/Resident Grievance Procedures. *Id.*

Pursuant to Policy 14-5, the processing of a standard inmate grievance at the Detention Facility consists of three stages: (a) Within seven days of becoming aware of a specific grievable

9

issue, the inmate must file an Informal Resolution. A department-level supervisor or other appropriate official must respond to the Informal Resolution within fifteen days of receipt; (b) If the inmate is dissatisfied with the response to the Informal Resolution, the inmate must file a Formal Grievance within five days. The Grievance Officer must respond to the Formal Grievance within fifteen days of receipt; (c) If the inmate is dissatisfied with the response to the Formal Grievance, the inmate must file a Grievance Appeal within five days. The Warden must respond to the Grievance Appeal within fifteen days of receipt. The response of the Warden is final, thus exhausting available administrative remedies. *Id.*, ¶ 4. If an inmate files a Formal Grievance without first filing an Informal Resolution or without attaching a completed Informal Resolution to the Formal Grievance, the flawed Formal Grievance is treated as an Informal Resolution. *Id.*, ¶ 5.

Plaintiff failed to exhaust his administrative remedies. *Id.*, ¶ 7; Docket No. 112-2. On July 10, 2014, Plaintiff filed an Informal Resolution asking why an emotionally unstable inmate is not placed in four-point restraints or a restraining chair at all times. *Id.* In response, Plaintiff was informed that there must be a medical order in place for an inmate to be restrained. *Id.* Plaintiff never filed a Formal Grievance or Grievance Appeal related to this issue.

On that same day, Plaintiff filed another Informal Resolution claiming that Case Manager Pam Hayes read his legal mail and that some of his personal property was missing. *Id.*, ¶ 8. Plaintiff received a response stating that his issue was being handled through the lost-property process. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On July 17, 2014, Plaintiff filed an Informal Resolution alleging that he experienced

racial discrimination and self-inflicted severe trauma, that he was missing his orthopedic shoe inserts, and that fellow inmates had "packed his property." *Id.* While Plaintiff received a response, he did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On July 24, 2014, Plaintiff filed an Informal Resolution claiming that inmates "packed his property," that he was missing personal property, and that he was placed in the segregation unit because of his race. *Id.*, ¶ 10. Plaintiff received a response, but he did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On August 2, 2014, Plaintiff filed an Informal Resolution stating that he had not received medication or received necessary medical treatment. *Id.*, ¶ 11. Plaintiff received a response stating that he was seen by medical on August 6, 2014. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

On August 21, 2014, Plaintiff attempted to file a Formal Grievance, but he did not follow the appropriate procedure of attaching the related Informal Resolution. *Id.*, ¶ 12. As a result, per CCA policy, this filing was treated as an Informal Resolution. *Id.* In this document, Plaintiff does not state any complaints or issues with his treatment at the Detention Facility. *Id.* Plaintiff did not file a Formal Grievance or Grievance Appeal related to this issue. *Id.*

Plaintiff failed to complete the grievance process for any of his claims because he did not file a Formal Grievance or a Grievance Appeal. *Id.*, ¶ 13.

**F. Affidavit of Staci Turner, N.P.**

Staci Turner, N.P., is employed by CCA as a Nurse Practitioner at the Detention Facility. Docket No. 113, Affidavit of Staci Turner, N.P. ("Turner Aff."), ¶ 1.

Plaintiff began his incarceration at the Detention Facility on February 10, 2014. *Id.*, ¶ 3.

On June 18, 2014, Plaintiff suddenly and without any warning intentionally hit his head against the wall. *Id.*, ¶ 4. As a result, he sustained injuries and was transported to the hospital where he received medical treatment. *Id.*, ¶ 5. Plaintiff was subsequently placed on suicide watch at the Detention Facility. *Id.*, ¶ 6.

Two days after this incident, on June 20, 2014, Nurse Turner evaluated Plaintiff and documented that she had seen him five days prior to this incident. *Id.*, ¶ 7. Plaintiff reported to Nurse Turner on that day that the mental health medication that he was taking had helped him, that he currently was able to be responsible for himself, and that he had no intention to hurt himself or anyone else. *Id.*, ¶ 8.

From the date on which Plaintiff began his incarceration (February 10, 2014) through the date on which he filed this lawsuit (August 26, 2014), medical and mental health professionals evaluated him on approximately fifty occasions and provided him with multiple does of various medications. *Id.*, ¶ 9. Throughout his incarceration, Plaintiff received appropriate medical treatment and medications. *Id.*, ¶ 10.

Since his arrival at the Detention Facility, competent medical providers continuously have monitored and treated Plaintiff's various conditions. *Id.*, ¶ 20. CCA medical providers have performed physical evaluations, provided necessary treatment and medications, requested laboratory testing, referred to outside treatment sources, and adjusted Plaintiff's care plan as necessary. *Id.*, ¶ 21.

When Plaintiff complained that his mental health medications were not working effectively, medical providers appropriately and repeatedly modified his prescriptions. *Id.*, ¶ 22. Mayers was provided with all of the necessary medication from the date on which he began

incarceration through the date on which he filed this lawsuit. *Id.*, ¶ 23.

### G. Affidavit of Latasha Williams-Golden

Latasha Williams-Golden, is employed by CCA as a Sergeant at the Detention Facility. Docket No. 114, Affidavit of Latasha Williams-Golden ("Williams-Golden Aff."), ¶ 1.

On June 18, 2014, Sergeant Williams-Golden personally observed Plaintiff stand-up repeatedly from his wheelchair before the standing ID count conducted at 3:45 p.m. that day. *Id.*, ¶ 3. During that standing ID count on June 18, 2014, Plaintiff did not have an order from the medical department, yet he refused to stand. *Id.*, ¶ 4. Usually, if an inmate refuses to stand, the corrections officer on duty will write a report recording that the inmate refused to cooperate with the standing ID count procedures. *Id.*, ¶ 5.

In this instance, however, Plaintiff did much more than refuse to stand. *Id.*, ¶ 6. After he refused to stand, Plaintiff became hostile and lunged toward Case Manager Pam Hayes. *Id.*, ¶ 7. During this assault, Plaintiff also began screaming profanities and violently pushed his wheelchair toward me. *Id.*, ¶ 8. Sometime later, Plaintiff did attempt to apologize for his aggressive behavior with the wheelchair. *Id.*, ¶ 9.

## III. Law and Analysis

### A. Local Rules 56.01(c) and (g)

Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within

> the time periods provided by these Rules shall indicate that the
> asserted facts are not disputed for the purposes of summary
> judgment.

Although Plaintiff has filed a Response and two supporting Briefs, none of those submissions responds to Defendants' Statement of Undisputed Material Facts. Plaintiff's failure to respond to Defendants' Statement of Undisputed Material Facts indicates that the asserted facts are not disputed for purposes of the instant Motion. Accordingly, there is no genuine dispute as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B.  Summary Judgment Standards**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond to its Statement of Undisputed Material Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded.  The
> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden ... The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

Plaintiff alleges violations of his First and Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. The Case at Bar**

As an initial matter, the individual Defendants are all employees of CCA. Because Plaintiff sues Defendants in their official capacities only, they stand in the shoes of CCA. *See, e.g., Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). Accordingly, the undersigned must analyze whether CCA is entitled to summary

judgment.

CCA is a private corporation that contracts with the State to operate penal facilities. A private entity that contracts with the State to perform a traditional state function, such as operating a penal facility, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CCA is amenable to suit under § 1983.

Section 1983, however, does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for CCA to be held liable, therefore, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Plaintiff in the case at bar does not contend that any official CCA policy or custom caused the alleged deprivation of his rights. Because Plaintiff does not allege, much less establish, that the alleged violations of his rights were caused by an official CCA policy, custom, or usage, he cannot sustain his claim, and Defendants are entitled to a judgment as a matter of law.[3]

---

[3] As noted, Defendants raise several grounds for the granting of the instant Motion. *See* Docket Nos. 106 and 107. Because the undersigned finds that Plaintiff has failed to allege that the alleged violations of his rights were caused by an official CCA policy, custom, or usage and therefore cannot sustain his claim, the undersigned will not address Defendants' remaining grounds.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, no genuine issues of material fact exist and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 106) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge